IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

NATIONAL SECURITY COUNSELORS,          )
                                       )
        Plaintiff,                     )
                                       )
        v.                             )        No. 1:11-cv-00444 (BAH)
                                       )
CENTRAL INTELLIGENCE AGENCY,           )
                                       )
        Defendant,                     )
                                       )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANT'S PARTIAL MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**PAGE**

**INTRODUCTION** ................................................................................................ 1

**STANDARD OF REVIEW** ................................................................................ 2

**ARGUMENT** ...................................................................................................... 3

I.  Because FOIA provides an adequate remedy, the APA's waiver of sovereign
    immunity does not apply, and NSC's APA claims should be dismissed for lack of subject
    matter jurisdiction ........................................................................................ 3

II. NSC's mandamus claims do not meet the requirements for mandamus relief and should
    be dismissed for lack of subject matter jurisdiction or failure to state a claim ................ 5

III. NSC does not have standing to seek prospective relief because it cannot show a real and
     immediate threat of future injury ................................................................ 6

    A.   Alleged Refusal to Provide Aggregate Data .......................................... 8

    B.   Alleged Refusal to Accept Administrative Appeals
         Regarding Improper FOIA Requests ..................................................... 9

    C.   Alleged Misapplication of "Reasonably Describe" .............................. 10

    D.   Alleged Failure to Follow Regulation .................................................. 11

    E.   Alleged Imposition of Arbitrary Cut-Off Dates ................................... 12

IV. Even if NSC had standing to bring it policy and practice claims, those claims should be
    dismissed for failure to state a claim .......................................................... 12

    A.   FOIA does not require the CIA to aggregate data. ............................... 13

    B.   The FOIA does not require agencies to accept administrative appeals of decisions
         that requests are improper. ................................................................... 14

    C.   The CIA can consider the configuration of its record system in determining
         whether a FOIA request adequately describes the documents sought.. ............. 15

    D.   The CIA works with potential FOIA requesters to help them formulate proper
         requests. ............................................................................................... 17

i

E.      The CIA's alleged policy of using a date-of-response-letter search cut-off is
        reasonable and consistent with the FOIA. ........................................................... 19

**CONCLUSION**   ...................................................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**                                                          **PAGE ((S)**

American Historical Assocation v. National Archives and Records Adminisration,
 310 F.Supp. 216 (D.D.C. 2004) ........................................................ 8

Anderson v. Holder,
 691 F. Supp. 2d 57 (D.D.C. 2010) ................................................... 3

Ashcroft v. Iqbal,
 --- U.S. ---, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ........................... 3

Assassination Archives and Research Center, Inc. v. C.I.A.,
 720 F.Supp. 217 (D.D.C. 1989) ...................................................... 16

Auburn Regional Medical Center v. Sebelius,
 686 F.Supp. 2d 55 (D.D.C. 2010) .................................................... 5

Blakey v. Department of Justice,
 549 F.Supp. 362 (D.D.C.1982) ...................................................... 16

Chang v. United States,
 738 F.Supp.2d 83 (D.D.C. 2010) .................................................. 2, 3

City of Los Angeles v.Lyons,
 461 U.S. 95, 102 (1983) ............................................................ 3, 6

Crew v. U.S. Department of  Homeland Security,
 527 F. Supp.2d 101 (D.D.C. 2007) .................................................. 7

Dale v. I.R.S.,
 238 F.Supp.2d 99, 103 (D.D.C. 2002) ............................................. 15

Edmonds Inst. v. U.S. Dep't of the Interior,
 383 F.  Supp. 2d 105 (D.D.C. 2005) ................................................. 4

Fornaro v. James,
 416 F.3d 63 (D.C. Cir. 2005) ........................................................ 5

Frank v. U.S. Dept. of Justice,
 941 F.Supp. 4 (D.D.C. 1996) ....................................................... 14

iii

Haase v. Sessions,
    835 F.2d 902 (D.C. Cir. 1987) ................................................................ 6

In re Medical Reimbursement,
 414 F.3d 7 (D.C. Cir. 2005) ...................................................................... 5

Kenney v. U.S. Dep't of Justice,
603 F. Supp. 2d 184 (D.D.C. 2009) .......................................................... 4

Kissinger v. Reporters Comm. for Freedom of the Press,
    445 U.S. 136 (1980) ............................................................................ 13

Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,
    507 U .S. 163 (1993) ............................................................................. 2

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) ............................................................................. 2

Marks v. U.S. Dept. of Justice,
    578 F.2d 261 (9th Cir. 1978) ............................................................... 16

McGehee v. CIA,
    697 F.2d 1095, 1102, (D.C. Cir 1983) ................................................ 20

Physicians Comm. for Responsible Med. v. U.S. Dep't of Health and Human Servs.,
    480 F. Supp. 2d 119 (D.D.C. 2007) ...................................................... 4

Public Citizen v. Dep't of State,
    276 F.3d 634 (D.C. Cir. 2002) ............................................................. 20

Raines v. Byrd,
    521 U.S. 811 (1997) ............................................................................. 2

Ramstack v. Dep't of Army,
    607 F.Supp.2d 94, 102 (D.D.C. 2009) ................................................ 14

Sierra Club v. U.S. Dep't of the Interior,
    384 F. Supp. 2d 1 (D.D.C. 2004) .......................................................... 4

In re United Mine Workers of Am. Employee Benefit Plans Litig.,
    854 F. Supp. 914 (D.D.C. 1994) ........................................................... 3

United States v. Sherwood,
    312 U.S. 584 (1941) ............................................................................. 3

iv

Yeager v. DEA,
    678 F.2d 315 (D.C. Cir.1982) ............................................................... 13

## STATUTES & REGULATIONS

5 U.S.C. § 701 *et. seq* ............................................................................ 1, 4

28 U.S.C. § 1361 ..................................................................................... 5

552 U.S.C. § (a)(3)(A) ...................................................................... 13, 14

552 U.S.C. § (a)(6)(i) .............................................................................. 14

5 U.S.C. s 552(a)(3) ............................................................................... 15

32 CFR 1900.12(a) ................................................................................. 15

32 CFR 1900.12(c) ........................................................................ 14, 17, 18

32 CFR 1900.42 ..................................................................................... 14

## **RULES**

Rule 12(b)(1) .......................................................................................... 2

Rule 12(b)(6) .......................................................................................... 3

**INTRODUCTION**

Plaintiff National Security Counselors ("NSC") filed this action against the Central Intelligence Agency ("CIA"), asserting twenty-one Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and FOIA-related claims.  The CIA now moves to dismiss thirteen of those claims under Federal Rules of Civil Procedure 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.[1]

NSC has brought four claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et. seq.*, and four claims under the Mandamus Act, 28 U.S.C. § 1361.  APA and Mandamus relief, however, are only available when there is not another adequate remedy available.  Because the FOIA provides an adequate remedy, NSC's APA claims – Claims 3, 6, 12 and 15 – and its Mandamus claims – Claims 4, 8, 13, 16 – should be dismissed.

NSC has brought a total of thirteen claims - 5 FOIA claims, 4 APA claims, and 4 Mandamus claims – challenging CIA's alleged FOIA policies and practices and seeking prospective relief in the form of declarations and injunctions compelling the CIA to change its alleged policies.  To have standing to seek prospective relief, a plaintiff must show a real and immediate danger of direct injury.  Because NSC cannot make that showing, it lacks standing to bring the thirteen claims seeking prospective relief - Claims 2, 3, 4, 5, 6, 7, 11, 12, 13, 14, 15, 16, and 21 – and those claims should be dismissed for lack of subject matter jurisdiction.

Even if the Court had jurisdiction to consider NSC's policy and practice challenges, those

---

[1] The CIA is not moving to dismiss the other eight claims in NSC's First Amended Complaint.  The parties have conferred regarding these claims and will set a summary judgment briefing schedule at the appropriate time if necessary.

1

claims would still be subject to dismissal.  Several of NSC claims are based on alleged policies that are consistent with the FOIA, while others are based on alleged policies that the CIA clearly has not adopted.  As NSC cannot establish that the CIA has adopted policies or practices that violate the FOIA, its thirteen policy and practice claims should be dismissed for failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

When a defendant brings a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  In determining whether the plaintiff has carried its burden, the Court must accept as true all of the factual allegations contained in the complaint. Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U .S. 163, 164 (1993).

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Raines v. Byrd, 521 U.S. 811, 818 (1997). A core element of the case-or-controversy requirement is that a plaintiff must establish that it has standing to sue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  In order to satisfy the "irreducible constitutional minimum of standing," a plaintiff must demonstrate: (1) that it has suffered injury in fact, an actual or imminent invasion of a legally protected, concrete and particularized interest; (2) a causal connection between the alleged injury and the defendant's conduct at issue; and (3) that it is "likely," not "speculative," that the court can redress the injury. Id. at 560–61. A plaintiff seeking injunctive relief must establish a fourth element to have standing.  Chang v.

United States, 738 F. Supp. 2d 83, 88 (D.D.C. 2010).  It must show a real and immediate danger

of future injury, demonstrated by more than a showing of  past harm.  Id. (citing City of Los

Angeles v. Lyons, 461 U.S. 95, 102 (1983)).  If a plaintiff cannot make that showing, it has not

met the requirements for seeking an injunction in federal court.  Id.

To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.  Anderson v. Holder, 691 F.

Supp. 2d 57, 61 (D.D.C. 2010) (brackets omitted).  A court considering a Rule 12(b)(6) motion

must construe the complaint in the light most favorable to the plaintiff and must accept as true all

reasonable factual inferences drawn from well-pleaded factual allegations.  In re United Mine

Workers of Am. Employee Benefit Plans Litig., 854 F. Supp. 914, 915 (D.D.C. 1994).  However,

where the well-pleaded facts do not permit a court, drawing on its judicial experience and

common sense, to infer more than the "mere possibility of misconduct," the complaint has not

shown that the pleader is entitled to relief.   Ashcroft v. Iqbal, ---U.S. ---, 129 S.Ct. 1937, 1949,

1950, 173 L.Ed.2d 868 (2009).

## ARGUMENT

**I.**     **Because FOIA provides an adequate remedy, the APA's waiver of sovereign
       immunity does not apply, and NSC's APA claims should be dismissed for lack of
       subject matter jurisdiction.**

The United States, as sovereign, "is immune from suit save as it consents to be sued, and

the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit."

United States v. Sherwood, 312 U.S. 584, 586 (1941) (citations omitted).  The APA waives

sovereign immunity for claims (1) not seeking "money damages"; (2) "for which there is no

other adequate remedy"; and (3) that are seeking relief that is not "expressly or impliedly

forbidden by another statute." 5 U.S.C. §§ 702, 704.  Based on the second requirement, this

Court has repeatedly held that an APA claim must be dismissed if it either is premised on a

violation of FOIA or seeks relief that can be obtained through a FOIA claim. See, e.g., Kenney v.

U.S. Dep't of Justice, 603 F. Supp. 2d 184, 190 (D.D.C. 2009) ("Plaintiff's claim that the

[Defendant] improperly withheld agency records that were reponsive to his FOIA request is, of

course, reviewable under the FOIA itself. Accordingly, plaintiff does not also have access to

judicial review under the APA." (internal citations omitted)); Sierra Club v. U.S. Dep't of the

Interior, 384 F. Supp. 2d 1, 30 (D.D.C. 2004) ("The FOIA itself provides an adequate remedy for

Plaintiffs' claims and separate APA review is not available.");  see also, e.g., Physicians Comm.

for Responsible Med. v. U.S. Dep't of Health and Human Servs., 480 F. Supp. 2d 119, 121 n.2

(D.D.C. 2007) (dismissing APA claim because "[a]lthough the APA governs judicial review

generally of 'final agency action,' review under the APA is limited to those agency actions for

which there is no adequate remedy in court. There is, of course, an adequate remedy in court

under FOIA." (internal citations omitted)); Edmonds Inst. v. U.S. Dep't of the Interior, 383 F.

Supp. 2d 105, 111 (D.D.C. 2005) (holding that "review under the APA is unavailable" where

"[t]he FOIA statute offers a clear and simple remedy for" the alleged "agency non-compliance

with the FOIA").

All of NSC's four APA claims are based on alleged violations of the FOIA and seek

relief available under the FOIA.  In fact, each of NSC's four APA claims immediately follows an

identical claim brought under the FOIA.  Although NSC fails to adequately allege these claims,

see infra Sections III and IV, the availability of such review means that the APA's waiver of

sovereign immunity does not apply.  Accordingly, NSC's APA claims – Claims 3, 6, 12, and 15

4

– should be dismissed for lack of subject matter jurisdiction.

## II.     NSC's mandamus claims do not meet the requirements for mandamus relief and should be dismissed for lack of subject matter jurisdiction or failure to state a claim.

Mandamus is a drastic remedy to be invoked only in extraordinary situations and to be granted only when essential to the interests of justice.  Auburn Regional Medical Center v. Sebelius, 686 F.Supp. 2d 55, 71 (D.D.C. 2010).  " Under 28 U.S.C. § 1361,[2] a court has jurisdiction to grant mandamus relief only if '(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff.'"  Id. (quoting In re Medical Reimbursement Litigation, 414 F.3d 7, 10 (D.C. Cir. 2005)); see Fornaro v. James, 416 F.3d 63, 69 (D.C. Cir. 2005).  "Even when the legal requirements for mandamus jurisdiction have been satisfied, however, a court may grant relief only when it finds compelling equitable grounds."  In re Medical Reimbursement, 414 F.3d at 10.  "In resolving a motion to dismiss an action for relief in the nature of mandamus, courts have characterized the issue as involving both a jurisdictional and a merits inquiry because, in determining whether the court has jurisdiction to compel an agency or official to act, the court must consider the merits question of whether a legal duty is owed to the plaintiff under the relevant statute."  Auburn Regional, 686 F.Supp. 2d at 71.  Accordingly, the CIA moves to dismiss NSC's Mandamus claims under both Rules 12(b)(1) and 12(b)(6).

NSC's four mandamus claims fail to meet any of the three requirements for mandamus relief.  First, NSC does not have a clear right to relief.  As set forth below, see infra Sections III

---

[2] The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

and IV, NSC does not have standing to bring its policy and practice challenges and has failed to state claims upon which relief can be granted.  Second, the CIA does not have a clear duty to act. As explained in Section IV, NSC seeks declarations and injunctions that would compel the CIA to take actions that are not required by the FOIA.  Third, the FOIA provides an adequate remedy for NSC's claims.  In fact, each of NSC's mandamus claims is proceeded by nearly identical claims brought under the APA and the FOIA.  Because NSC's mandamus claims do not meet any of the three mandamus requirements, they should be dismissed either for lack of jurisdiction or for failure to state a claim.

## III.   NSC does not have standing to seek prospective relief because it cannot show a real and immediate threat of future injury.

NSC has brought thirteen claims challenging five alleged CIA policies or practices that NSC claims violate the FOIA.  In each of these claims, NSC seeks prospective relief in the form of a declaration and injunction compelling the CIA the change its alleged policy.  To have standing to bring a claim for prospective relief, a "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Lyons, 461 U.S. at 102-03 (quotation marks omitted).[3]  When challenging an alleged policy or practice, "more than a nebulous assertion of the existence of a 'policy' is required to establish standing. The plaintiffs must not only demonstrate its existence but also that they are likely to be subjected to the policy again." Haase, 835 F.2d at 911.

---

[3] Although the plaintiff in Lyons sought only injunctive relief, the D.C. Circuit has held that the Supreme Court's decision in Lyons apples equally to claims for declaratory relief. Haase v. Sessions, 835 F.2d 902, 911 (D.C. Cir. 1987).

In this case, NSC attempts to establish standing to seek prospective relief through speculation as to how the CIA would respond to future or hypothetical FOIA requests.  This Court has reject similar attempts in the past.   In <u>CREW v. U.S. Department of Homeland Security</u>, 527 F. Supp. 2d 101 (D.D.C. 2007), CREW challenged the denial of its FOIA request for certain White House visitor logs and, at the same time, raised an APA challenge to DHS's policy governing the retention of those records. <u>Id.</u> at 102. Judge Lamberth concluded that CREW lacked standing to seek prospective injunctive or declaratory relief with respect to its policy challenge because it had alleged only a past harm, namely that some records responsive to its FOIA request had been deleted pursuant to the challenged policy. <u>Id.</u> at 105-06.  The court specifically rejected CREW's claim of a "continuing injury" based on its intention to "continue to use the FOIA to gain access to agency records" in the future, efforts that CREW contended would continue to be frustrated by DHS's record retention policy.  <u>Id.</u> at 106 (citation omitted).  Although the court described CREW's alleged injury as "certainly plausible," it found it "too speculative and remote" to establish standing for prospective relief because "nothing in the record before the Court suggests how frequently these requests are made . . . and whether (or when) CREW expects to file future FOIA requests."  <u>Id.</u>  In short, the possibility that CREW might someday file another FOIA request was "not enough to establish an imminent, non-speculative injury-in-fact" sufficient to ground standing to seek prospective relief.  <u>Id.</u> at 107.

Judge Kollar-Kotelly rejected a similar argument in <u>American Historical Association v. National Archives and Records Administration</u>, 310 F. Supp. 2d 216 (D.D.C. 2004). The plaintiffs in that case, who sought access to the presidential records of former President Reagan,

challenged the legality of an Executive Order pursuant to which those records had been withheld. Id. at 218.  Arguing that the Executive Order conflicted with the Presidential Records Act, they sought a declaratory judgment that the Executive Order was invalid and an injunction barring its future application. Id. at 224 n.5. By the time the Court considered the plaintiffs' claim, however, most of the records the plaintiffs sought had already been released; the balance had been withheld pursuant to an assertion of privilege, over which there was no dispute; and the plaintiffs had no outstanding requests for presidential records.  Id. at 223-24, 228. Thus, while the court accepted that the plaintiffs had suffered a past harm (in the form of delay in the release of the records), it concluded that their assertion of future harm, based on their "regular[]" and "extensive use of the records of former presidents," was too speculative to support standing. Id. at 228. The court concluded that even the "significant likelihood that [p]laintiffs will again seek access to presidential records, and face indeterminate delays in accessing them," does not establish the requisite future injury that is "sufficiently imminent, and not conjectural and hypothetical," and thus dismissed plaintiffs' claims for prospective relief for lack of standing. Id. at 228-29.

Like the plaintiffs in Crew and American Historical Association, NSC's relies on allegations that it may be harmed in the future that are too speculative to establish standing to seek prospective relief.  Accordingly, NSC's claims for prospective relief should be dismissed for lack of subject matter jurisdiction.

### A. Alleged Refusal to Provide Aggregate Data

In Claims 2, 3, and 4, NSC alleges (1) that the "CIA's refusal to process requests for aggregate data represents an ongoing policy, practice, or standard operating procedure;" (2) that

the alleged policy or practice violates the FOIA; and (3) that "[a]s a frequent FOIA requester,

NSC stands to continue to be harmed by this ongoing practice in the future."  Compl. ¶¶ 12, 14,

and 15.  Even if accepted as true, these allegations do not establish standing to seek prospective

relief.  NSC has not alleged that it regularly submits requests for aggregate data, or even that it

plans to submit such requests in the future.  As such, the injury it is complaining of is neither real

nor immediate.  Instead, NSC seems to base its injury claim on a hypothetical situation: if it were

to submit a request for aggregate data, and the CIA were to deem its request to be improper,

NSC would be harmed.  This type of speculative harm is not enough to create standing to seek

prospective relief.  Accordingly, NSC's claims challenging the CIA's alleged policy of refusing

to accept FOIA requests for aggregate data should be dismissed.

> ### B.   Alleged Refusal to Accept Administrative Appeals Regarding Improper FOIA Requests

In Claims 5, 6, and 7, NSC alleges that it is "aware of numerous instances in which the

CIA has refused to process a FOIA request it deemed improper.  In none of those circumstances

was the requester allowed to administratively appeal the CIA's decision.  Upon information and

belief, this activity represents an ongoing policy, practice, or [standard operating procedure]."

Compl. ¶ 28.  NSC then alleges that the CIA's alleged policy or practice violates the FOIA and

that "[a]s a frequent FOIA requester, NSC stands to continue to be harmed by this ongoing

practice in the future."  Id. at ¶¶ 29-30.  Again, NSC's injury claim is neither real nor immediate.

 Rather it is based on speculation that (1) NSC will submit a FOIA request to the CIA at

sometime in the future; (2) the CIA will deem that request to be improper; and (3) the CIA will

not allow NSC to administratively appeal its decision.  NSC has not claimed that it intends to

submit future FOIA requests to the CIA that the Agency is likely to find improper.  Moreover,

NSC cannot base its injury claims upon speculation concerning how the CIA would react to a future or hypothetical FOIA request.  Because NSC's claims of speculative harm are not enough to create standing to seek prospective relief, its  challenges to the CIA's alleged policy of refusing to accept administrative appeals should be dismissed.

      **C.**        **Alleged Misapplication of "Reasonably Describe."**

In Claims 11, 12, and 13, NSC alleges that it "is aware of numerous instances in which the CIA has refused to process a FOIA request it deemed improper, stating that the request failed to "reasonably describe" the records sought.  In the majority of these cases, the CIA has cited the configuration of its records systems as a disqualifying factor." <u>Id.</u> at ¶ 58.  NSC further alleges that "this activity represents an ongoing policy, practice or [standard operating procedure]" that violates the FOIA and "[a]s a frequent FOIA requester, NSC stands to continue to be harmed by this ongoing practice in the future."  <u>Id.</u> at ¶¶ 59-60.  NSC's injury claim is predicated on speculation that (1) NSC will file a future FOIA request with the CIA; (2) the CIA will determine that the request is improper because it does not reasonably describe the records sought; and (3) the CIA will cite the configuration of its records as a determinative factor in its decision.  Again, NSC has not claimed that it plans to submit future FOIA requests to the CIA that the Agency is likely to deem improper and cannot rely on speculation as to how the CIA will react to a future or hypothetical FOIA request to show the injury-in-fact necessary to establish standing. Because this is not the type of real and immediate harm necessary to seek prospective relief, NSC's challenges to CIA's alleged policy of improperly applying the reasonably describe standard should be dismissed.

### D.        Alleged Failure to Follow Regulation

In Claims 14, 15, and 16, NSC notes that the CIA has a regulation which states that if it determines that a requester has not reasonably described the documents requested, the request "will be considered an expression of interest and the Agency will work with, and offer suggestions to, the potential requester in order to define the request properly." Id. at ¶ 73.  NSC then alleges that it "is aware of numerous instances in which CIA has refused to process a FOIA request it deemed improper.  In virtually none of those circumstances, including the requests that are the subject of the instant action, did *CIA* contact the requester to work with and offer suggestions to, the potential requester in order to define a request properly." Id. at ¶ 74.  NSC further alleges that the CIA has a policy or practice of refusing to follow its regulation and that "[a]s a frequent FOIA requester, NSC stands to be harmed by this ongoing practice."  Id. at ¶¶ 75-76.

NSC's claimed injury is based on speculation that (1) NSC will submit a future FOIA request to the CIA, (2) the CIA will determine that NSC has not reasonably described the documents sought, and (3) the CIA will fail to work with and offer suggestions to NSC to formulate a proper request.  Again, NSC has not claimed that it plans to submit future FOIA requests to the CIA that the Agency is likely to deem improper and cannot rely on speculation as to how the CIA will react to a future or hypothetical FOIA request to show the injury-in-fact necessary to establish standing.  Because this type of speculative, hypothetical harm is not sufficient to create standing to seek prospective relief, NSC's claims alleging that NSC fails to follow its regulation should be dismissed.

11

### E.     Alleged Imposition of Arbitrary Cut-Off Dates

In Claim 21, NSC alleges that "in every response letter NSC has received from CIA, CIA has imposed an arbitrary cut-off date on the search of the date of the response letter, regardless of the nature of the request or how long the search is expected to take." Id. at ¶ 112.  NSC further alleges that the CIA has a policy of using a date-of-response-letter search cut-off and that "[a]s a frequent FOIA requester, NSC stands to continue to be harmed by this ongoing practice in the future." Id. at ¶¶ 113-114.  NSC's claim is based on speculation that (1) it will submit a FOIA request to the CIA in the future, (2) the CIA will impose a date-of-response search cut-off date, and (3) NSC will be harmed by the imposition of a date-of-response search cut-off date.  NSC has not claimed that it plans to submit FOIA requests to the CIA in the future or alleged how a policy of setting a date-of-response-letter search cut-off would harm it with respect to future FOIA requests.  Conjecture over how an alleged policy would affect future or hypothetical FOIA requests is insufficient to establish standing to seek prospective relief.  Accordingly, NSC's claim challenging the CIA's alleged policy of using a date-of-response-letter search cut-off should be dismissed.

## IV.   Even if NSC had standing to bring it policy and practice claims, those claims should be dismissed for failure to state a claim.

NSC does not have standing to bring its challenges to alleged CIA policies and practices.  But even if it had standing to bring them, NSC's policy and practice claims fail to state a claim upon which relief can be granted.  NSC's thirteen policy and practice claims challenge five alleged CIA policies or practices that it claims violate the FOIA.  Four of the alleged polices are consistent with the FOIA.  As to the fifth, NSC's own complaint demonstrates that NSC has not adopted the alleged practice.  As NSC cannot establish that the CIA has adopted policies or

practices that violate the FOIA, its policy and practice claims should be dismissed for failure to state a claim.

**A.      FOIA does not require the CIA to aggregate data.**

Claims 2, 3, and 4 allege that (1) the CIA has a policy of refusing to process requests for aggregate data; (2) the alleged policy violates the FOIA; and (3) NSC as a frequent FOIA requester stands to be harmed by the alleged policy in the future. Id. at ¶¶ 12, 14-15.  NSC provides an example of a "request for aggregate data" in Claim One.  In that claim, NSC alleges that it "submitted to CIA four FOIA requests for database listings of all FOIA requesters from Fiscal Years 2008-2010 according to the fee categories to which CIA assigned them.  Id. ¶ 6. The CIA responded to NSC's request with a letter explaining that "[t]he FOIA does not require federal agencies to create a record, collect information, conduct research, or analyze data. Therefore, we must decline to process this request."  Id. ¶ 9.

The FOIA directs federal agencies to make records available to any person who submits a proper request.   552 U.S.C. § (a)(3)(A).  "The Act does not [however] obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 152 (1980); see  Yeager v. DEA, 678 F.2d 315, 321 (D.C. Cir.1982) ("It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request.  A requester is entitled only to records that an agency has in fact chosen to create and retain.").  Federal agencies are "not required, by FOIA or by any other statute, to dig out all the information that might exist, in whatever form or place it might be found, and to create a document that answers [a] plaintiff's question." Frank v. U.S. Dept. of Justice, 941 F.Supp. 4, 5

(D.D.C. 1996).

The CIA does not have a database "of listings of all FOIA requesters from Fiscal Years 2008-2010 according to the fee categories to which CIA assigned them."  Id. ¶ 6.  And the FOIA does not require it to create a document responsive to NSC's FOIA request.  Because the FOIA does not require federal agencies to aggregate data to create a document responsive to a FOIA request, the CIA's alleged policy of refusing to process requests to aggregate data is consistent with the FOIA.  As NSC cannot establish that the CIA's alleged policy violates the FOIA, Claims 3, 4, and 5 should be dismissed for failure to state a claim upon which relief can be granted.

**B.      The FOIA does not require agencies to accept administrative appeals of decisions that requests are improper.**

In Claims 5, 6, and 7, NSC alleges (1) that the CIA has a policy of denying administrative appeals to requesters whose FOIA requests are deemed improper; (2)  that the alleged policy violates the FOIA; and (3) the NSC as a frequent FOIA requester stands to be harmed by the policy.  Compl. ¶¶ 28-30.

Under the FOIA, a proper FOIA request must reasonably describe the documents sought and comply with the published rules and procedures.  5 U.S.C. 552 § (a)(3)(A).  If the CIA receives a communication that does not meet these requirements, it considers the communication an expression of interest and works with and offers suggestions to the potential requester in order to define a request properly.  32 CFR 1900.12(c).  When an agency receives a proper FOIA request, it must notify the requester within twenty business days of whether it will comply with the request. 5 U.S.C. § 552(a)(6)(i).  The agency must also notify the requester of its right to an administrative appeal of "any adverse determination."  Id.  The term "adverse determination" is

14

not defined in the FOIA.  The CIA has a regulation, however, that provides meaning to the term

"adverse determination" by delineating the types of determinations that trigger the right to an

administrative appeal.  Under CIA regulation 32 CFR § 1900.42., "[a] right of administrative

appeal exists whenever access to any requested record or any portion thereof is denied, no

records are located in response to a request, or a request for a fee waiver is denied."

Under the FOIA, agencies have discretion to determine whether a communication from a

potential FOIA requester meets the requirements to be a valid FOIA request. See Kowalczyk v.

U.S. Dep't of Justice, 73 F.3d 386, 388 (D.C.Cir.1996) ("A request reasonably describes records

if "the agency is able to determine precisely what records are being requested.").  The

requirements of the FOIA, including the requirement that agencies provide requesters an

opportunity to administratively appeal adverse determinations, do not begin to apply until an

agency receives a valid FOIA request.  See Ramstack v. Dep't of Army, 607 F.Supp.2d 94, 102

(D.D.C. 2009) ("[C]ourts have held that only a valid FOIA request can trigger an agency's FOIA

obligations."); Dale v. I.R.S., 238 F.Supp.2d 99, 103 (D.D.C. 2002) ("The IRS's obligation

under FOIA begins only upon receipt of a valid request.").  Accordingly, the FOIA does not

require agencies to provide potential requesters the opportunity to administratively appeal a

determination that a communication is not a valid FOIA request.  As the CIA's policy regarding

administrative appeals is consistent with the FOIA, NSC's administrative appeals claims should

be dismissed for failure to state a claim.

### C.   The CIA can consider the configuration of its record system in determining whether a FOIA request adequately describes the documents sought.

In Claims 11, 12, and 13, NSC alleges that (1) CIA has a policy of citing to the

configuration of its records as a factor in determining that FOIA requests are improper because

they do not reasonably describe the records sought; (2) the CIA's alleged policy violates the FOIA; and (3) NSC has a frequent FOIA requester stands to be harmed by the policy in the future.  Compl. ¶¶ 58-60.

"The FOIA requires that federal agencies make records available only upon a request which 'reasonably describes' the records sought."  Marks v. U.S. Dept. of Justice, 578 F.2d 261, 263 (9th Cir. 1978) (quoting 5 U.S.C. § 552(a)(3)).  A request adequately describes a record if it would enable a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort.  Id. (quoting  H.R. Rep. No.93-876, at 6 (1974); see CIA FOIA Regulation 32 CFR 1900.12(a) (reasonably describe "means that documents must be described sufficiently to enable a professional employee familiar with the subject to locate the documents with a reasonable effort. Commonly this equates to a requirement that the documents must be locatable through the indexing of our various systems.").   Courts have recognized that whether a professional agency employee could locate a record with a reasonable amount of effort depends both on the nature of the request and the type of records system an agency has.  See e.g., Assassination Archives and Research Center, Inc. v. C.I.A., 720 F. Supp. 217, 219 (D.D.C. 1989) ([A]gencies are not required to maintain their records or perform searches which are not compatible with their own document retrieval systems.");  Blakey v. Department of Justice, 549 F. Supp. 362, 366-67 (D.D.C.1982) ("The FOIA was not intended to compel agencies to become ad hoc investigators for requesters whose requests are not compatible with their own information retrieval systems."), aff'd 720 F.2d 215 (D.C. Cir.1983) (modified on other grounds).

Because the way the CIA's records system is configured directly affects whether a CIA

16

professional employee can locate requested documents with a reasonable amount of effort, the configuration of its records system is a proper factor for the CIA to consider in determining whether a FOIA communication adequately describes the requested records.  Because the CIA's alleged policy of considering the configuration of its records in determining whether a FOIA request adequately describes the documents sought is consistent with the FOIA, Claims 11, 12, and 13 of NSC's complaint should be dismissed for failure to state a claim upon which relief can be granted.

> **D.      The CIA works with potential FOIA requesters to help them formulate proper requests.**

In Claims 14, 15, and 16, NSC alleges that the CIA has a policy or practice of violating its regulation, which states that the Agency will consider communications that do not adequately describe the records sought as statements of interest and will work with and offer suggestions to the potential requester in order to define a request properly.  Compl. ¶¶ 73, 75.  NSC bases its claims on allegations that it "is aware of numerous instances in which CIA has refused to process a FOIA request it deemed improper.  In virtually none of those circumstances, including the requests that are the subject of the instant action, did CIA *contact the requester* to 'work with and offer suggestions to, the potential requester in order to define a request properly.'"  Id. at ¶ 74 (emphasis added) (quoting 32 CFR §1900.12(c)).

As an initial matter, NSC's allegations are based on a misreading of the CIA's regulations.  CIA regulations do not obligate the CIA to *contact requesters* who submit improper FOIA requests and help them formulate proper requests.  Rather, 32 CFR §1900.12(c) states only that the CIA "will work with, and offer suggestions to, the potential requester in order to define a request properly."  NSC's allegation that the CIA has not contacted potential requesters to help

them formulate proper FOIA requests, even if accepted as true, does not establish that the CIA has violated its regulation.

Moreover NSC's own complaint contains examples of the CIA working with and offering suggestions to NSC to help it formulate proper requests.  In Claim 9, NSC alleges that it submitted a FOIA request to the CIA seeking "a representative sample of analytical reports and memoranda presenting psychological analyses or profiles of foreign government officials, terrorist leaders, international criminals, business figures, and other intelligence targets prepared by the Medical and Psychological Analysis Center ("MPAC") or its predecessor Office of Leadership Analysis ("OLA")." Compl. ¶ 47.  The CIA responded with a letter explaining that it could not accept NSC's request in its current form because it would require the Agency to perform an unreasonably burdensome search.  Compl. ¶ 48.  The letter, however, also contained request-specific suggestions for how NSC could refine its records request: "We encourage you to refine the scope of your request (such as including a narrower time frame for, and more specific descriptions of the information you seek) to enable us to conduct a reasonable search for responsive information." Id.

In Claim 10, NSC gives another example of the CIA reaching out to a potential requester to provide suggestions for submitting a proper request.  NSC submitted a FOIA request to the CIA seeking "all CIA records pertaining to the CIA supercomputer named Watson." Compl. ¶ 52.  Again the CIA sent NSC a letter stating that it could not accept NSC's FOIA request in its current forum because it would require the Agency to perform an unreasonable search.  Compl. ¶ 53.  And once again, the CIA provided NSC with request-specific suggestions for formulating a proper FOIA request: "We encourage you to refine the scope of your request (such as contracts,

18

if they exist, which would explain record pertaining to 'Watson') to enable us to conduct a reasonable search for responsive information." <u>Id.</u>

NSC's allegations that the CIA is violating its own regulation are undercut by its misreading of 32 CFR § 1900.12(c) and the examples it provides in Claims 9 and 10 of the CIA working with NSC and providing request-specific suggestions for how NSC could formulate proper requests. As NSC cannot establish that the CIA has a policy or practice of not working with potential FOIA requesters as required by its regulations, Claims 14, 15, and 16 should be dismissed for failure to state a claim.

### E.   The CIA's alleged policy of using a date-of-response-letter search cut-off is reasonable and consistent with the FOIA.

In Claim Twenty-One, NSC alleges (1) that the CIA has adopted a policy of imposing date-of-response-letter search cut-off dates; (2) the policy violates the FOIA; and (3) NSC as a frequent FOIA requester stands to be harmed by the policy. Compl. ¶¶ 112-14.

The scope of a FOIA request is defined both by the subject matter of the records sought and when the requested records were created. <u>See</u> <u>Church of Scientology of Texas v. IRS</u>, 816 F. Supp. 1138, 1148 (W.D.Tex.1993) ("[T]here has to be a temporal deadline for documents that satisfy [a FOIA] request."). The temporal scope of a FOIA request is typically established through the agency's use of a "cut-off date" and records created after the cut-off date are deemed as not responsive to the request. <u>See</u> <u>Defenders of Wildlife v. U.S. Dep't of the Interior</u>, 314 F. Supp.2d 1, 12 n. 10 (D.D.C. 2004) (holding that the agency's FOIA regulation establishing a date-of-search cut-off date meant that records created after that date were not covered by the FOIA request). When a FOIA requester challenges a cut-off date, the question before the Court is whether the cut-off date used is reasonable. <u>Jefferson v. Bureau of Prisons</u>, 578 F. Supp. 2d

55, 60 (D.D.C. 2008).  With respect to agency policies regarding cut-off dates, the D.C. Circuit

has noted that "specific circumstances in some agencies may render an across-the-board rule

reasonable."  Public Citizen v. Dep't of State, 276 F.3d 634, 643 (D.C. Cir. 2002).

 The CIA's alleged policy of using a date-of-response-letter search cut-off date is

reasonable.  It provides for a more thorough search than a date-of-request cut-off date, see

McGehee v. CIA, 697 F.2d 1095, 1102 (D.C. Cir.1983) (rejected the proposition that under

FOIA, "the use of a time-of-request cut-off date is always reasonable"), while still offering the

consistency and uniformity that is needed by a large agency like the CIA that processes a high

volume of FOIA requests.  Because the CIA's alleged policy of using a date-of-response-letter

cut-off is reasonable, Claim Twenty-One of NSC's complaint should be dismissed for failure to

state a claim upon which relief can be granted.

## <u>CONCLUSION</u>

 For all the reasons stated above, the Court should grant the CIA's partial motion to
dismiss.

Dated: May 27, 2011       Respectfully submitted,

             TONY WEST
             Assistant Attorney General

             ELIZABETH J. SHAPIRO
             Deputy Branch Director

             /s/ Ryan Parker
             RYAN  PARKER
             Trial Attorney
             United States Department of Justice
             Civil Division, Federal Programs Branch
             20 Massachusetts Avenue, N.W.
             Washington, DC 20530
             Tel: (202) 514-4336; Fax: (202) 616-8202
             Attorneys for Defendant