# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL SECURITY COUNSELORS,   *
      *
      Plaintiff,     *
      *
      v.      *
      *     Civil Action No.: 1:11-cv-00444 (BAH)
CENTRAL INTELLIGENCE AGENCY,   *
      *
      Defendant.    *
      *

  *   *   *   *   *   *   *   *   *   *   *   *   *

## PLAINTIFF'S SECOND MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ALL REMAINING CLAIMS AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff National Security Counselors ("NSC") commenced this litigation[1] against

Defendant Central Intelligence Agency ("CIA") pursuant to the Freedom of Information Act

("FOIA"), the Administrative Procedure Act, and the Mandamus Act to obtain copies of several

different types of records and to compel CIA to reverse several of its patterns or practices which

are inconsistent with FOIA.  Over the next year, several counts were dismissed by the Court from

the original complaints.  On 20 December 2011, 8 August 2012, 31 January 2013, and 18 March

2013, CIA moved for summary judgment on the remaining counts, and the Court ruled on those

Motions on 15 August 2013, granting in part and denying in part CIA's Motion.  On 7 March

2014, CIA moved again for summary judgment on all remaining counts, including its refusal to

---

[1] The instant case was originally filed as two cases: *NSC v. CIA*, No. 11-443 (D.D.C.)
[hereinafter *NSC-I*], and *NSC v. CIA*, No. 11-444 (D.D.C.) [hereinafter *NSC-II*].  On 2 April
2014, the Court consolidated both cases into *NSC-II*.  Therefore, this brief will use "this case" to
refer to the consolidated case.  However, to avoid confusion, filings from *NSC-I* and *NSC-II* filed
before the consolidation will be identified accordingly.

provide electronic records.[2]  On 16 April 2014, the Court stayed briefing regarding the electronic

records issue to allow time for one of NSC's declarants to put his declaration through CIA's

prepublication review process.  On 17 April 2014, NSC filed its Opposition to CIA's Motion on

all issues except electronic records.  NSC now files this brief in opposition to CIA's Motion on

the electronic records issue and in support of NSC's Cross-Motion for Partial Summary

Judgment on that matter.  The Court should deny summary judgment to CIA and award summary

judgment to NSC on the question of whether or not CIA is required to release electronic records

in response to its request.

## BACKGROUND

As the Court knows, CIA takes the position that it cannot release records in electronic

form in response to FOIA requests because of the labyrinthine process for making electronic

releases it has instituted.  It maintains that *no* CIA records—except those which it has chosen to

release on CD in the past—are readily reproducible in electronic form.  This policy is implicated

in five[3] counts in this case:

- *NSC-I*, Count 1: This is a request for eleven articles originally published in the

  CIA in-house journal *Studies in Intelligence* ("*Studies*"), which was originally

  filed by the James Madison Project and then assigned to NSC.  Because CIA

  steadfastly maintained until 15 August 2013 that it did not have to recognize the

  assignment of rights and refused to make any other arguments regarding this

---

[2] Defendants did not file a Statement of Material Facts Not in Dispute, presumably because there are no material facts pertinent to this Motion not in dispute.  For the same reason, NSC is similarly not filing a Statement of Material Facts Not in Dispute.

[3] The Court's previous Minute Orders only cite three counts affected by this policy, but, as described below, this is not accurate.

request, the parties never briefed the question of whether or not it was required to release records in electronic form, even though the original request clearly stated that preference.  CIA has only released responsive records to NSC in paper form.

- *NSC-I*, Count 3: This is a request for all the Tables of Contents ("TOCs") for *Studies* published as of the date of the request.  CIA has only released responsive records to NSC in paper form.

- *NSC-II*, Count 17: This is a request for hundreds of FOIA request letters and response letters.  CIA has only released responsive records to NSC in paper form.

- *NSC-II*, Count 18: This is a request for records about the search tools and indices used by the CIA FOIA Office.  CIA has only released responsive records to NSC in paper form.

- *NSC-II*, Count 20: This is a request for records about guidelines for attorneys working in the CIA Office of General Counsel.  CIA has failed to identify and process any responsive records, but NSC has challenged the adequacy of its search.  If CIA ends up identifying any responsive records, NSC's request for them to be produced in electronic form stands.

NSC has always considered the electronic records issue to be in controversy in every count against CIA in these cases.  (*See*, *e.g.*, Pl.'s Mot. Stay Briefing of Defs.' Mot. Summ. J. on All Remaining Counts, or, Altern., to Bifurcate Briefing, Dkt. #63, at 1 (filed Mar. 31, 2014) (stating that "the electronic records question is in controversy in the *NSC* cases" and defining "the *NSC* cases" as *NSC-I*, *NSC-II*, and *NSC-III*).)  However, as the Court observed in its consolidated 15 August 2013 Memorandum Opinion, neither NSC nor CIA had previously properly presented the issue to the Court in the context of a Motion for Summary Judgment.

3

*NSC v. CIA*, 960 F. Supp. 2d 101, 202-03 (D.D.C. 2013) [hereinafter *NSC v. CIA* Op.].

Accordingly, NSC believes that it is still in controversy in all CIA counts: (1) in which CIA has

or will release records; and (2) which NSC has not previously voluntarily dismissed.  Every

request NSC (or the James Madison Project before it) has submitted to CIA has included a

request for electronic records, and each count in these three cases incorporates those requests by

reference.  Despite the generic language granting summary judgment to CIA "in all other

respects" in the Orders issued on 15 August 2013,[4] that clause cannot be read to grant summary

judgment to CIA on the electronic records issue when the Court has specifically stated not only

that the electronic records issue was not properly presented to it on summary judgment, but that

"[t]o the extent that the CIA implicitly moved for summary judgment on the electronic records

issue by submitting a declaration attached to its reply brief, the Court denies summary judgment

to the CIA."  *Id.* at 203.

## ARGUMENT

This policy has been the subject of extensive briefing in this case and the related cases

*NSC v. CIA*, No. 11-445 (D.D.C.) [hereinafter *NSC-III*], *NSC v. CIA*, No. 12-284 (D.D.C.)

[hereinafter *NSC-IV*], and *Scudder v. CIA*, No. 12-807 (D.D.C.).  However, as the Court noted in

its 15 August 2013 Opinion, neither CIA nor NSC properly moved for summary judgment on

this question in this case previously.  There were competing motions for summary judgment on

this question in *Scudder*, however, but those motions were withdrawn after the parties agreed

---

[4] It should be noted that this language is absent from the Court's 15 August 2013 Order in *NSC-I*.
That Order simply states that CIA's "Motion for Summary Judgment on Counts One and Two is
DENIED."  Therefore, even assuming *arguendo* that the Court meant to preclude briefing of the
electronic records issue in *NSC-II* and *NSC-III* except where otherwise noted, it has never done
so for Count 1 in *NSC-I*.

that the responsive records would be published on the CIA website.  Therefore, this is the first

time that this question will be fully decided by this Court.  However, because of the extensive

previous briefing on the matter, this brief will largely be drawn from previous filings, so NSC

apologizes in advance for the repetition.  To the degree that previous filings can inform the

Court's decision beyond the parts incorporated below, this brief incorporates by reference all

previous arguments on the matter in NSC's previous filings in this case, *NSC-III*, and *NSC-IV*,

and the plaintiff's filings in *Scudder*.[5]

      Despite having over two years' worth of declarations and briefs in which to defend this

policy, CIA has still failed to provide any evidence or argument in defense of this policy other

than its circular and conclusory claim that its unique security needs mandate the unreasonably

convoluted and redundant process it has established for the release of electronic records, and that

that unreasonably convoluted and redundant process is completely reasonable because of its

---

[5] *NSC-I*: Pl.'s Mot. Status Conf. Regarding Count 3, Dkt. #15 (filed Dec. 1, 2011); Pl.'s Reply
Supp. Mot. Status Conf. Regarding Count 3, Dkt. #17 (filed Dec. 2, 2011); Pl.'s Notice of Add'l.
Authority Regarding Count 3 & Elec. Records, Dkt. #18 (filed Dec. 14, 2011); Pl.'s Suppl.
Notice of Add'l Authority Regarding Count 3 & Elec. Records, Dkt. #20 (filed Dec. 14, 2011);
Tr. of Status Conf. of 12/16/11, attached as Ex. A; Pl.'s Mot. Suppl. Status Conf. Regarding
Count 3 & Elec. Records, Dkt. #22 (filed Jan. 17, 2012); Pl.'s Reply Supp. Mot. Suppl. Status
Conf. Regarding Count 3 & Elec. Records, Dkt. #24 (filed Jan. 22, 2012).

*NSC-II*: Pl.'s Opp'n Def.'s Mot. Summ. J. on Cts. 1, 8, 9, 10, 17, 18, & 20, Dkt. #26, at 39-40
(filed Feb. 8, 2012).

*NSC-III*: Pl.'s Opp'n Defs.' Mot. Summ. J. on Cts. 1, 2, 3, 5, 6, 7, 8, 9, 10, & 13, Dkt. #33, at 37
(filed Oct. 26, 2012).

*NSC-IV*: Pls.' Opp'n Defs.' Part. Mot. Dismiss Pls.' 1st Am. Compl., Dkt. #18, at 22-24, 27-30
(filed May 23, 2012).

*Scudder*: Pl.'s Mem. P. & A. Supp. Pl.'s Mot. Summ. J. on Elec. Production of Requested
Records or Altern. for Discovery &/or Evid. Hrg., Dkt. #9 (filed June 11, 2013); Pl.'s Reply

unique security needs.  This tautological argument—which CIA claims the Court must not question because of the "substantial weight" it is required to accord to agency decisions of reproducibility—simply cannot bear up to *any* degree of scrutiny, even the deferential scrutiny allowed by "substantial weight."  Accordingly, this brief will first address the reasons that CIA's policy is not proper on its face, regardless of the records at issue (the "facial" challenge), and then address why, even if the Court accepts that CIA's policy is proper in general, its application to the records in question is not allowed under FOIA (the "as applied" challenge).

## I.      FACIAL CHALLENGE

As computer technology became more prevalent in our society, Congress amended FOIA in 1996 and modified the definition of "record" to include electronic records.  Electronic Freedom of Information Act Amendments of 1996, Pub. L. 104-231, 110 Stat. 3048, 3049 (codified as amended at 5 U.S.C. § 552(f)(2)).  Importantly, Section 5 U.S.C. § 552(a)(3)(B) was added and currently reads:

> In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format. Each agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section.

Thus, this provision requires agencies to do two simple things. First, they must provide responsive records in the form or format requested if the responsive records are readily reproducible in that form or format.  Second, agencies must make reasonable efforts to maintain their records in forms or formats that are reproducible.

---

Def.'s Opp'n Pl.'s Mot. Summ. J. & Opp'n Def.'s Cross-Mot. Summ. J., Dkt. #21 (filed Sept. 16, 2013).

Other than this Court's treatment in its 15 August 2013 Opinion, there is sparse judicial guidance on the interpretation of Section 552(a)(3)(B) and no known decisions that address CIA's technical capabilities in fulfilling this provision when a requester seeks production of records in an electronic format.  Nevertheless, the D.C. Circuit noted in *Sample v. Bureau of Prisons*, 466 F.3d 1086, 1088 (D.C. Cir. 2006), that an agency's "determination as to reproducibility must be accorded 'substantial weight' by the reviewing court."  In doing so, the Court was not addressing the merits of the specific question in this case; it was simply reciting the FOIA statute itself rather than setting forth any specific new policy guidance to the District Court.  *See* 5 U.S.C. § 552(a)(4)(B) (directing courts reviewing the withholding of records to "accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility . . . and reproducibility").  The Circuit further noted that "[u]nder any reading of the statute, however, 'readily reproducible' simply refers to an agency's technical capability to create the records in a particular format."  *Sample*, 466 F.3d at 1088.  *See also*, *e.g.*, *LaRoche v. SEC*, 289 Fed. App'x 231, 231 (9th Cir. 2008) (explaining agency not required to create new documents to satisfy FOIA request when it could not readily reproduce records sought in searchable electronic format requested); *TPS, Inc. v. DoD*, 330 F.3d 1191, 1195 (9th Cir. 2003) (FOIA "requires that the agency satisfy a FOIA request [for the production of records in a certain format] when it has the capability to readily reproduce documents in the requested format"); *Citizens for Resp. & Ethics in Wash. v. Dep't of Educ.*, 905 F. Supp. 2d 161, 171 (D.D.C. 2012) (agency's email records are not "readily reproducible" in electronic format and its email retention system "will not display or print" the BCC field "for any retrieved email.").

Thus, the law is clear in this Circuit that when a requester has specifically sought electronic production and an agency can "readily reproduce" a record in that particular format it

must do so.  *Sample*, 466 F.3d at 1089.  This determination is one of fact, not law, and is based on the exact records being requested.

CIA's interpretation of the basic truth that not all records are readily reproducible in electronic form, however, twists this otherwise sound concept into something completely unrecognizeable.  NSC does not dispute that *some* CIA records may not be readily reproducible in electronic format.  NSC concedes that it is likely that *many* CIA records may not be readily reproducible in electronic format.  However, this factual determination is supposed to be made on a record-by-record basis.  CIA has, instead, established a process that it claims makes it functionally impossible for *any* records to be readily reproducible in electronic format except those it affirmatively decides to electronically publish.  It claims to perform a record-by-record reproducibility analysis, but the only question it asks during the analysis is "Have we chosen to include this record in a CD collection before?"  Such a system, especially one that was implemented well after the passage of the 1996 FOIA amendments, cannot be reconciled with CIA's responsibilities under FOIA.

In all of the inapposite cases CIA has cited in defense of this policy, *see* Defs.' Mem. Supp. Defs.' Part. Mot. Dismiss Pls.' 1st Am. Compl., Dkt. #14, at 31 (filed May 1, 2012), *NSC-IV*, the question before the court was whether an agency had to create records or reorganize records "for the future convenience of requesters" (*id.*) or in response to a particular FOIA request.  There is a large difference, however, between not having to cater to the whims of particular requesters when the statute does not require it and actually being in violation of the statute itself.  However, CIA attempts to avoid searching analysis of its false comparison by rehashing the argument that its system, ostensibly established to protect "national security," cannot be questioned, not only because of the "substantial weight" question discussed above, but

8

because "security measures figure so heavily in the Agency's determination."  Def.'s Mem. P. &
A. Supp. Def.'s Opp'n Pl.'s Mot. Summ. J. & Def.'s Cross-Mot. Summ. J., Dkt. #14, at 13 (filed
July 19, 2013), *Scudder* (citing *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926-27 (D.C.
Cir. 2003) ("It is well-established that the judiciary owes some measure of deference to the
executive in cases implicating national security."); *id*. at 927 ("[W]e have consistently deferred to
executive affidavits predicting harm to national security, and have found it unwise to undertake
searching judicial review.")).

The problem for the CIA is, however, that the dispute at hand has very little to do with
"implicating national security."  As the CIA itself has repeatedly argued, its primary basis for
determining that electronic records cannot allegedly be reproduced in electronic format is one of
claimed burden and lack of resources.  (*See*, *e.g.*, Suppl. Lutz Decl., Dkt. #60-1, ¶¶ 34-47 (filed
Mar. 7, 2014) ("These security procedures, which are essential to the operations of the Agency,
make it prohibitively costly and burdensome to produce records in an electronic format in
response to information access requests.  Accordingly, the CIA has determined that records are
not readily reproducible in an electronic format and, as such, cannot comply with plaintiffs'
stated preference of receiving documents as PDFs instead of paper.").)  What this means is, even
if the Court were to find that it cannot second-guess CIA on the question of whether or not its
system is necessary to protect national security (which it should not), that is the extent of the
degree to which this matter "implicates national security."  The Court still must consider
whether CIA's self-imposed system, no matter why it was imposed, can allow it to categorically

define *all records* as "not readily reproducible in an electronic format" in direct violation of

FOIA.[6]

FOIA generally disfavors categorical rules.  Fifteen years ago, the D.C. Circuit rejected as

overly broad a categorical rule relied upon by the United States Customs Service as the basis for

issuing *Glomar* responses refusing to confirm or deny the existence of responsive records

pertaining to third parties.  *See Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d

885, 896 (D.C. Cir. 1995); *see also United States v. Landano*, 508 U.S. 165, 176-80 (1993)

(rejecting categorical rule for applying Exemption (b)(7)(D)).  The D.C. Circuit noted that there

are limits to when categorical rules are permissible, namely "[o]nly when the range of

circumstances included in the category 'characteristically supports an inference' that the

statutory requirements . . . are satisfied."  *See Nation Magazine*, 71 F.3d at 893.  Even for an

otherwise meritorious categorical rule, however, an agency must still defend it with particularity.

*See Banks v. DOJ*, 813 F. Supp. 2d 132, 146 (D.D.C. 2011) (denying agency's motion for

summary judgment, noting that although Exemption (b)(7)(E) offers "categorical" protection of

techniques and procedures, "vague" or "conclusory" descriptions of such withholdings are

insufficient).  This presumption against categorical rules is not limited to issues of exemptions,

and has been expressed in the context of other FOIA provisions where agencies are supposed to

make case-by-case determinations.  *See*, *e.g.*, *Public Citizen v. Dep't of State*, 276 F.3d 634, 643

(D.C. Cir. 2002) (disfavoring "reflexive application of [a] cut-off policy to every request

regardless of circumstances"); *Schoenman v. FBI*, 604 F. Supp. 2d 174, 192 (D.D.C. 2009)

---

[6] At this point, it is important to take note of CIA's argument in defense of its program that "any changes to the existing DTO program would require security and budgetary approvals from the highest levels of the Agency."  (Suppl. Lutz Decl. ¶ 41.)  With all due respect to Ms. Lutz, what

(rejecting argument "that all documents originating from outside the government are categorically ineligible for a fee waiver").  Simply put, if categorical rules about exemptions are disfavored, and categorical rules about cut-off dates are disfavored, and categorical rules about fees are disfavored, then why should a categorical rule about "ready reproducibility" *not* be disfavored?  *See Founding Church of Scientology of Wash. v. NSA*, 610 F.2d 824, 836-37 (D.C. Cir. 1979) ("To accept its claim of inability to retrieve the requested documents in the circumstances presented is to raise the specter of easy circumvention of the Freedom of Information Act . . . .").

Moreover, CIA's allegations regarding its need for the process it has established and the limitations of its computer systems are not supported by the evidence.  Jeffrey Scudder ("Scudder") authored two declarations in his case refuting many of CIA's claims regarding its system.  *See* Scudder Decl., Dkt. #9-1 (filed June 11, 2013), *Scudder*, attached as Ex. B [hereinafter 1st Scudder Decl.]; 2d Scudder Decl., Dkt. #21-1 (filed Sept. 16, 2013), *Scudder*, attached as Ex. C.  In response to specific issues raised in CIA's most recent argument, he has authored a third declaration for this case.  *See* Scudder Decl., attached as Ex. D [hereinafter 3d Scudder Decl.].

Scudder has spent twenty-three years in the Intelligence Community, almost all of it handling information technology ("IT") issues.  (1st Scudder Decl. ¶ 2).  He headed the CIA's Chief Information Officer's Architecture and System Engineering staff for the National Clandestine Service ("NCS"), worked in Information Security for the Counter Intelligence Center, and was a senior IT project manager at both the Federal Bureau of Investigation ("FBI")

---

steps an agency has to take in order to comply with the law (or a Court Order) has absolutely no bearing on whether or not it should be made to.

and CIA.  He also spent two years working in Information Management Systems ("IMS") and

has a deep knowledge of the CIA's Automated Declassification and Release Environment

("CADRE") system.[7]  (*Id*.)  Scudder not only used the CADRE system for two years but also

worked with the CACI system engineers who designed it and the HighView system on which it

is based.  (1st Scudder Decl. ¶ 3; 3d Scudder Decl. ¶ 9 (identifying HighView as the CACI

system underlying CADRE).

> Scudder explained:
>
> CADRE sits on the Agency's Common Work Environment ("CWE"), which is a
> classified system used by the entire organization.  In CIA's day-to-day work there
> are numerous processes and activities that require moving material from the high-
> side (or CWE) to the low-side (unclassified system).  For example, every week
> CIA Contract Officers have to correspond with the myriad of companies the
> Agency deals with, technical rep and project managers need to discuss work
> product with vendors, CIA Public Affairs e-mails material to the media as well as
> the public, and the list goes on and on.
>
> To accommodate this every day reality CIO and Office of Security developed a
> process and technology to make the transfer from the high to low side secure and
> efficient.  Each CIA office can identify an officer to be a Data Transfer Officer
> ("DTO").  These individuals are trained on how to operate software to transfer
> files.  In addition a software program was developed to transfer and write data
> without spilling data, changing files, or adding or deleting anything from the
> transferred data.  In fact, and quite importantly, the DTO is allowed to have a
> working DVD drive in which he/she can burn files onto a DVD for passage to the
> requestor or to upload on CIA's unclassified system.  The process that we utilized
> is very similar to how an external FOIA request is processed by the CIA.

(1st Scudder Decl. ¶¶ 15-16.)

The CIA already has systems and procedures in place that are utilized on a daily basis by

its thousands of employees and contractors to do exactly what it claims it cannot do in order to

lawfully respond to FOIA requesters who seek electronic production.  (*Id*. ¶ 17.)  Indeed, the

---

[7] CADRE is the system currently used by CIA for processing FOIA requests.

process is so routinely used that it raises serious questions as to whether CIA's statements to this Court are completely disingenuous.  (*Id.*; *see also id.* ¶ 18 ("Given that CADRE is on CWE, it would be simple to have an IMO use the existing DTO process to burn any declassified documents processed through FOIA to a DVD, just as the rest of the organization does and I did all the time while I worked for IMS").)

Yet CIA claims that "the process of moving responsive documents from the classified system to the unclassified system and then burning the documents to a CD that can be produced to a FOIA requester is labor intensive and can take weeks or even months to complete."  Add'l Authority for CIA's Position Regarding 5 U.S.C. § 552(a)(3)(B), Dkt. #19, at 4 (filed Dec. 14, 2011), *NSC-III*.  Based on Scudder's expertise and first-hand experience with his work at CIA, however, there are at least "three methods that CIA can and does utilize today that can easily be implemented to allow for the release of electronic media for FOIA requestors."  (1st Scudder Decl. ¶ 19.)

The first method pertains to CIA's current ability to scan records at its scanning center. That CIA office, at a cost of millions of taxpayers' dollars, maintains high-quality scanners that can scan in approximately one hundred pages per minute.  Using this existing option to process requestd would actually save CIA both time and money and is in stark contrast to what CIA now claims it must do in handling FOIA requests.  (*Id.* ¶ 20.)  It would also protect any classified information from even inadvertent disclosure.  (*Id.* ¶ 21.)

The second method allows CIA to print a document utilizing the CADRE system directly to a PDF file that can then be provided to requesters on DVDs as they have requested.  This

system is already "in place throughout the rest of the Agency." (*Id.* ¶ 23.)  Importantly, the

method addresses any concerns CIA has with respect to any potential security risks. (*Id.*)[8]

      The third and final method that is already available and contradicts CIA's claims is

CADRE's existing capabilities, which are not truthfully being described to the Court.  The

underlying CADRE system was set up by the defense contractor CACI, and Scudder verified that

CADRE has the current capability to coalesce one or more TIFF images (which is how

documents are stored in CADRE) to generate a PDF file.  No security concerns would exist.  (1st

Scudder Decl. ¶ 26; *see also* 3d Scudder Decl. ¶¶ 7-8 (explaining CADRE redaction process and

demonstrating that information once redacted cannot be recovered).).  Indeed, why CIA is

refusing to produce electronic records raises serious questions that it should be required to

address before this Court particularly given that other U.S. Government agencies that use

CACI's technology to redact classified material are already using this capability to generate PDF

files for release to the public through FOIA.  (1st Scudder Decl. ¶ 27; 3d Scudder Decl. ¶ 9.)  To

put it simply, one CACI senior architect told Scudder that "[t]he only reason CIA does not

produce electronic versions of FOIA requests is that they choose not to, there is no technical

reason to prevent it."  (3d Scudder Decl. ¶ 9.)[9]

---

[8] In fact, Scudder spoke with the senior architect from CACI, who still consults with IMS on maintaining CADRE, and he verified that sending a file to a printer or sending it to a PDF file will not change any content of the document.  What would be printed is sent as a PDF file, and nothing is added or removed.  The redacted words are not even on the PDF, just the black boxes that are used to show where redacted words once were.  (*Id.* ¶ 24; *see also* 3d Scudder Decl. ¶¶ 7-8 (explaining CADRE redaction process and demonstrating that information once redacted cannot be recovered).)

[9] A simple Google search of "HighView AND FOIA" yields many PDF records (with "HighView" in the metadata) released by FBI and the National Security Agency—agencies which *always* make electronic releases upon request, and which apparently use the same HighView platform as CIA.

Perhaps in recognition of the fact that Scudder could refute its concerns that "someone attempting to leak classified information could hide national security information behind redactions" (Suppl. Lutz Decl. ¶ 45), CIA has suggested an even more far-fetched method of using the electronic release process to harm national security, namely, writing the information "in a color spectrum that is not visible on the face of the document." (*Id.*)  In response to this fanciful concern, Scudder simply explains:

> Anything is possible but this is not a vulnerability I have ever heard about at CIA. If someone is able to upload software into the classified network or hack into applications then the CIA would have a threat far greater than electronic record release and there are many more sensitive applications that would be far greater targets than a declassification system.  One should ask [the Office of Security] if such threats are reasonable concerns or if the layers of existing security make this example rare if not impossible.

(3d Scudder Decl. ¶ 11.)

In fact, CIA's entire basis for this policy seems to be predicated on the assumption that it is easier for a bad actor working inside its FOIA Office to smuggle classified information out on electronic media than it is to do so on paper.  (*See* Suppl. Lutz Decl. at 30 n.11.)  However, CIA's own policies belie this statement.  Rather than always sending paper packages through the proper channels, in which they are presumable subject to examination by security personnel before being mailed, FOIA analysts are advised, "Occasionally, you will be facing a deadline and you will need to take the response to the post office."  ("FOIA Litigation" training slide, attached as Ex. E.)[10]  If any particular FOIA analyst can walk out of CIA Headquarters with a package full of paper, drive to a post office or UPS Store, and send that package somewhere, then that

---

[10] In fact, the undersigned once received a package of records from CIA sent from a UPS Store in Herndon, seventeen miles from CIA Headquarters.  There were no markings on the records or the envelope to indicate that it had passed through security and been approved to leave the building.  He has copies of the shipping material if the Court wishes to examine it.

same FOIA analyst can be trusted not to hack the CADRE system to print secret information in a spectrum of light not visible to the human eye.

## II.     "AS APPLIED" CHALLENGE

Scudder explained in his case why *Studies* articles are already available in PDF form (1st Scudder Decl. ¶¶ 7-11), and NSC will not further belabor that point as it pertains to Count 1 of *NSC-I*.  However, Scudder has further elaborated that when the past issues of *Studies* were scanned, a significant majority of them were scanned in their entirety, including the Tables of Contents.  (3d Scudder Decl. ¶ 5.)  Accordingly, while CIA *may* be able to demonstrate that *some* of the TOCs at issue in Count 3 of *NSC-I* are not readily reproducible in electronic form (if the Court finds that the form in which a record exists in CIA systems is determinative, which it should not), it definitely cannot demonstrate that *all*—or even *most*—of them are not already in CIA systems in electronic form.

With respect to *NSC-II*, the correspondence responsive to Count 17 is clearly in CADRE (that is the system's purpose, after all), two out of the three identified records responsive to Count 18 are located on an internal website, and the third is a copy of a *Federal Register* Notice, so CIA cannot say that these records do not exist in electronic form.

## III.    ALTERNATIVELY, DISCOVERY AND/OR AN EVIDENTIARY HEARING IS NEEDED TO ASCERTAIN CIA'S ABILITY TO PRODUCE ELECTRONIC RECORDS

If the Court determines that there are material facts in dispute with respect to CIA's ability to readily reproduce electronic records pursuant to FOIA requests, then it would respectfully be appropriate to allow for limited discovery and/or an evidentiary hearing to address this specific factual issue.

16

There is ample precedent for discovery in FOIA cases where factual questions are at issue. *See*, *e.g.*, *Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 181 (1975) (plaintiff permitted to depose agency official regarding question of whether documents at issue were final agency opinions); *Tax Analysts v. IRS*, 214 F.3d 179, 185 (D.C. Cir. 2000) (discovery necessary to develop factual record); *Schaffer v. Kissinger*, 505 F.2d 389, 391 (D.C. Cir. 1974) (reversing and remanding district court's summary judgment with instructions that plaintiffs be permitted to undertake discovery relating to whether records in question had been "properly classified"); *Cooper v. Dep't of the Navy*, 558 F.2d 274 (5th Cir. 1977), *modified*, 594 F.2d 484, 486 (1979), *cert. denied*, 444 U.S. 926 (1979) (FOIA plaintiff permitted depositions of Navy personnel); *Sun-Sentinel Co. v. DHS*, 431 F. Supp. 2d 1258, 1276 (S.D. Fla. 2006) (evidentiary hearing needed to determine whether agency's claim of significant interference relates to agency's "inability . . . to search for these records or to produce these records").

It is a black and white question of whether CIA can "readily reproduce" responsive records pursuant to a FOIA request in electronic format.  Either it can or it cannot.  That is a factual question that this Court should allow to be fully explored and ultimately decided upon, as it implied in its 15 August 2013 Opinion might be necessary:

> It may be that these and other lingering factual questions in these cases will have to be resolved in the traditional manner of resolving factual disputes in the federal judicial system—a hearing or trial. See Margaret B. Kwoka, *The Freedom of Information Act Trial*, 61 Am. U. L. Rev. 217, 268 (2011) (contending that "[a] look at the records in those rare FOIA trials demonstrates both that FOIA trials are possible and that they are useful").

*NSC v. CIA* Op. at 204.  (*See also* McClanahan Decl. ¶¶ 3-4, attached as Ex. F (explaining need for further information).)

## **CONCLUSION**

For the foregoing reasons, the Court should deny summary judgment to CIA on the

electronic records issue and grant summary judgment to NSC.  Alternatively, the Court should

hold an evidentiary hearing/trial on any contested factual issues.

Date:   May 7, 2014

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1200 South Courthouse Road
Suite 124
Arlington, VA  22204
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*